ALLIANCE LAUNDRY SYSTEMS LLC,
Plaintiff-Appellant,

v.

STROH DIE CASTING CO., INC.,
Defendant-Respondent.

Court of Appeals

*No. 2007AP2857. Submitted on briefs August 28, 2008.
—Decided November 19, 2008.*

2008 WI App 180

(Also reported in 763 N.W.2d 167.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Richard J. Lewandowski* and *Anthony J. Sievert* of *Whyte Hirschboeck Dudek, S.C.*, of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Douglas M. Poland* and *Rebecca Kathryn Mason* of *Godfrey & Kahn, S.C.*, of Madison.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. WISCONSIN STAT. § 802.06(2)(b) (2005–06)[1] allows the circuit court to convert a defendant's motion to dismiss for failure to state a claim into a summary judgment motion. Here, the circuit court did convert the motion into a summary judgment motion even though the defendant, Stroh Die Casting Co., Inc., had not filed an answer. The plaintiff, Alliance Laundry Systems LLC, claims that such conversion ran afoul of WIS. STAT. § 802.08, which requires that the pleadings be complete before a court can review a summary judgment motion. *City of LaCrosse v. Jiracek Cos., Inc.,* 108 Wis. 2d 684, 690, 324 N.W.2d 440 (Ct. App. 1982). So, the first issue is whether § 802.06(2)(b) serves as an exception to the summary judgment procedure laid out in § 802.08. We conclude that it is an exception and the court may convert a motion to dismiss into summary judgment before an answer is filed. We also hold that Alliance had the appropriate notice even though the court alerted Alliance that it "might" convert the case into a summary judgment rather than saying that it "would" do so. Nonetheless, we also hold that there exists a genuine issue of material fact as to the parties' intent. Consequently, we affirm the circuit court's conversion to summary judgment, reverse the grant of summary judgment and remand this case to allow Stroh to answer Alliance's complaint.

---

[1] WISCONSIN STAT. § 802.06(2)(b) states in relevant part:

If on a motion asserting the defense described in par. (a)6. to dismiss for failure of the pleading to state a claim upon which relief can be granted . . . matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08.

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

## Background

¶ 2.  In 1999, Alliance contracted with Stroh to manufacture die cast rack gears for use in its commercial laundry system. Alliance needed a manufacturer for the die cast part its engineers had designed. Stroh provided Alliance with a quotation that July to "[a]dapt the casting die to run in Stroh equipment." And a month later, Alliance sent Stroh a purchase order authorizing Stroh to produce 55,000 rack gears according to the attached engineering drawing. The drawing identified the manufacturing specifications for the rack gears, including specific materials and technical performance specifications. Both the quotation and the purchase order included general terms, conditions, and warranties. Stroh began manufacturing the rack gears for Alliance that year, as early as January 1999, and continued to do so until 2005.

¶ 3.  Much of Stroh's quotation is blank, with those sections that are filled out focusing on tooling. Notations near the top of the quotation reference the project number, part number, and other codes that Stroh uses. The bottom has separate sections for "Tooling" and "Castings." The tooling section lists the casting modification work and the price. The castings section is blank; it does not list a quantity or price for individual rack gears. Also, the "Exceptions and Remarks" section of the quotation specifically provides, "[t]his proposal includes the cost to modify the casting die only."

¶ 4.  The back of the quotation provided Stroh's warranties and disclosures. It disclaimed all implied warranties, required a thirty day notice of defects, limited Stroh's liability to repair, replacement, or credit for their return and imposed other specific requirements upon customers making warranty claims.

147

¶ 5. The purchase order primarily provides details for the "Rack." In the main section of the purchase order, the form lists the particular item, quantity, units, part number, and price, and when Alliance wants each shipment to take place. The purchase order states that changes to tooling must have prior approval by Alliance. The front and back of the purchase order also provided terms and conditions, including one that objected to any "different or additional terms or conditions in [the] acceptance of [the purchase order]."

¶ 6. Like Stroh's quotation, the back of the purchase order provided Alliance's warranties, among other terms and conditions. The warranty section required Stroh to warrant that the parts were "free from defects in workmanship, materials, and design and to be in accordance with Buyer's specifications, drawings, and/or samples in all respects." It also provided that Stroh "shall be liable and save Buyer harmless from any loss, damage, or expense whatsoever that Buyer may suffer from breach of any of these warranties."

¶ 7. About eight years later, on August 6, 2007, Alliance filed this action against Stroh, claiming that Stroh failed "to manufacture on a consistent basis, a defect-free . . . 'rack gear,' " and an "unacceptably high number of rack gears have failed in use" causing Alliance to incur substantial warranty repair expenses, significant additional costs over the ensuing five years, and other damages. Alliance claimed these costs were a result of Stroh's breach of contractual warranties, created by the purchase order, or breach of the implied warranties of merchantability or fitness for a particular purpose. Alliance also alleged that it gave Stroh "repeated notice of the defects and associated problems with the rack gear."

148

¶ 8.   Stroh responded with a motion to dismiss for failure to state a claim and attached a memorandum, an affidavit that introduced the quotation as an exhibit.[2] The affidavit only introduced the quotation; it did not provide any additional facts about the quotation or Stroh and Alliance's transactions. Stroh did, however, assert that the quotation is the governing contract for the actual rack gears, and that, under the U.C.C., the different or additional terms in the purchase order do not modify the quotation. Stroh did not file an answer.

¶ 9.   The circuit court, in its notice of hearing on October 26, 2007, alerted the parties that it might convert Stroh's motion to dismiss into one for summary judgment. Except Alliance's memorandum in opposition and Stroh's reply, neither party filed anything before the hearing in response to this notice.

¶ 10.   At the hearing on November 16, 2007, the circuit court granted Stroh's motion to dismiss, and in the alternative granted summary judgment for Stroh. After the court's ruling, Alliance requested permission to amend its complaint, and the court denied the request. The court ordered its final judgment for Stroh on November 21, 2007. Alliance appeals, asserting that judgment was premature.

## Procedural Issue

¶ 11.   In this case, the trial court granted summary judgment for Stroh even though the pleadings were incomplete. The only pleading before the court was Alliance's complaint. The court also had Alliance's purchase order and engineering drawing, Stroh's mo-

---

[2] Stroh also attached the engineering drawing as an exhibit, but this drawing was already properly before the court from Alliance's complaint.

tion to dismiss and attached affidavit and quotation, and the parties' memorandums. Because Stroh has not filed an answer to complete the pleadings, we must first determine if this court can properly review a summary judgment motion.

■■

¶ 12.  In summary judgment procedure, the court examines the complaint to determine if it sets forth a claim for relief, and if it does, the court examines the answer to determine if it joins issue, and if it does, it further proceeds to determine the summary judgment on the merits. *Hydrite Chem. Co. v. Aetna Cas. & Sur. Co.*, 220 Wis. 2d 26, 31–32, 582 N.W.2d 423 (Ct. App. 1998). To proceed through this process, the pleadings must be complete; otherwise, the court cannot review a motion for summary judgment. *See Jiracek Cos., Inc.*, 108 Wis. 2d at 690. And, important to this case, a motion is not a responsive pleading. *See* Wis. Stat. § 802.01(1); *La Batt v. Twomey*, 513 F.2d 641, 651 (7th Cir. 1975). The court disposes of a summary judgment motion by examining the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits to determine if they establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Nierengarten v. Lutheran Soc. Servs.*, 219 Wis. 2d 686, 695, 580 N.W.2d 320 (1998).

■

¶ 13.  The procedure for a motion to dismiss for failure to state a claim is different. A motion to dismiss is a pre-answer motion. Wis. Stat. § 802.06(1). Accordingly, § 802.06(1) extends the time limit for the defendant to file an answer until after the court denies its motion. The court disposes of a motion to dismiss by examining the complaint to determine if the facts alleged, if proven, would constitute a claim for relief. *Tower Special Facili-*

*ties, Inc. v. Investment Club, Inc.*, 104 Wis. 2d 221, 226, 311 N.W.2d 225 (Ct. App. 1981).

¶ 14.   When the defendant attaches affidavits or other matters outside the pleadings to its motion to dismiss and the court, in its discretion, considers these outside matters, the court must convert the defendant's motion into one for summary judgment. WIS. STAT. § 802.06(2)(b). This procedure is patterned after the FED. R. CIV. P. 12(d), so we look to federal cases and commentary for guidance. *See Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 2 n.2, 241 Wis. 2d 804, 623 N.W.2d 751. Historically, federal courts would consider matters outside the pleadings on a 12(b)(6) motion to dismiss, or the earlier "speaking" motion and demurrer, when those matters showed that there was no genuine issue of material fact and one party was entitled to judgment as a matter of law.

¶ 15. The "speaking" motion and demurrer, which at least in part spurred the creation of FED. R. CIV. P. 12(b)(6) and 12(d), followed this procedure in theory; however, its rules and limitations were undefined. Advisory Committee Note, FED. R. CIV. P. 12(b)(6) (1946). The 1946 amendments to the Rules included the provision governing this practice and connecting the motion to dismiss to the summary judgment rule. *See id.* Using this approach, courts may review the defendant's motion to dismiss and extra-pleading materials to dispose of the case according to the summary judgment procedure. *Id.* This requires the court to ask the dispositive question:   Is there any genuine issue of material fact, rather than merely showing that the challenged pleading fails to state a claim for relief. *See id.*

¶ 16.   The policy behind this procedure was to allow federal courts to identify those cases amenable to prompt disposition. *See id.* If, instead of converting, the

court granted the motion to dismiss, then the plaintiff would likely still have the opportunity to amend its complaint, thereby simply delaying ultimate defeat. *See id.* So, by converting, courts were able to more efficiently dispose of cases. *See id.* Thus, as suggested by the Second Circuit, "whatever its label or original basis, the motion may be treated as a motion for summary judgment and disposed of as such." *Id.* (citing *Samara v. United States*, 129 F.2d 594 (2d Cir. 1942), *cert. denied*, 317 U.S. 686 (1942)).

¶ 17. Importantly though, the Advisory Committee to the 1946 amendments particularly emphasized that this procedure does not allow a trial on the affidavits. Advisory Committee Note, FED. R. CIV. P. 12(b)(6) (1946). If the extra-pleading materials disclose a genuine issue of material fact, or if the merits of the extraneous matters are in question, then summary judgment must be denied. *Id.*; *see Lane Bryant, Inc. v. Maternity Lane, Ltd., of Cal.*, 173 F.2d 559, 564–65 (9th Cir. 1949) (judgment denied where the affidavits presented factual evidence rather than solved the legal issues). When the court denies judgment, it requires the defendant to file an answer. *See Lane Bryant, Inc.*, 173 F.2d at 564–65. Or, alternatively, the circuit court may refuse to consider the extra-pleading materials and treat the motion as one for dismissal. Advisory Committee Note, FED. R. CIV. P. 12(b)(6) (1946).

¶ 18. Accordingly, when a federal court converts the defendant's motion to dismiss to one for summary judgment, the defendant need not file an answer unless the court denies the converted motion. *See, e.g., Lane Bryant, Inc.*, 173 F.2d at 564–65; *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 390–91 (7th Cir. 1981). Thus, we read WIS. STAT.

§ 802.06(2)(b) to similarly allow a circuit court to convert a motion to dismiss into a summary judgment motion even though the defendant has not yet filed an answer. *See, e.g., CTI of Ne. Wis., LLC v. Herrell*, 2003 WI App 19, ¶ 2, 259 Wis. 2d 756, 759, 656 N.W.2d 794; *Hammer v. Hammer*, 142 Wis. 2d 257, 260 & n.3, 418 N.W.2d 23 (Ct. App. 1987). We hold, therefore, that § 802.06(2)(b) creates an exception to the general rule that pleadings must be complete before a court can rule on a summary judgment motion.

### *Notice*

¶ 19. Alliance claims that it never got the opportunity to submit any extra-pleading materials because the court did not provide proper notice that it was reserving its right to treat Stroh's motion as one for summary judgment under WIS. STAT. § 802.06(2)(b). Alliance asserts that it has more evidence, but did not submit it, apparently because it did not know it could since the court's "notice did not request any further briefing or affidavits." Simply put, Alliance's basic complaint is that it had "no opportunity—or reason—to submit evidence concerning other contractual relationships between the parties."

¶ 20. WISCONSIN STAT. § 802.06(2)(b) requires the court to provide both parties with *reasonable* notice that it will or might convert a motion to dismiss into a summary judgment motion, but it does not require the court to request additional briefs or affidavits. *See CTI of Ne. Wis., LLC*, 259 Wis. 2d 756, ¶¶ 5–6. Reasonable notice is that which informs the nonmoving party of the conversion or likelihood of conversion so that they are not taken by surprise. *See* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROC. CIV. § 1366 (3d ed. 2004). What constitutes reasonable no-

■■■

tice depends on the circumstances of each case. *CTI of Ne. Wis., LLC*, 259 Wis. 2d 756, ¶ 10. Notice need not be absolute though; the court need inform the parties only that it *could,* as opposed to *would,* treat the motion as one for summary judgment. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195–96 (5th Cir. 1988).

¶ 21.   In *Isquith*, the plaintiffs, in their memorandum of opposition, specifically asked the district court to inform them "if and when" it decided to convert to summary judgment. *Id.* at 196. The plaintiffs stated that they needed the information, but did not offer any reason why they could not have proffered the additional evidence at that time. *Id.* Finding no need or right to more specific notice, the court held that proper notification under the Federal Rules of Civil Procedure was notice that the district court *could* treat the motion as one for summary judgment, not whether the court *would* in fact do so. *Isquith*, 847 F.2d at 193. Further, *Isquith* held that if the plaintiffs needed more time to respond, they should follow summary judgment procedure to request a continuance. *Id.* at 196 (citing FED. R. CIV. P. 56(f)).

¶ 22.   We understand Alliance to argue that, if the circuit court was definitely going to treat the motion as one for summary judgment, it should have clearly stated its intent and provided a scheduling order for filing of further affidavits and briefing. It argues that Stroh should have been required to submit further affidavits and supporting materials to show that it was entitled to summary judgment and then Alliance would be entitled to file responsive material.

■

¶ 23.   While we agree that a circuit court could, and perhaps should, use such a process, we do not agree that this is the *mandated* procedure. As we said, notice

depends on the facts in each case and need not state that the court will, in fact, convert. And here, the facts are: First, that Stroh submitted an affidavit and an exhibit outside the pleadings and Alliance knew that. Second, in a notice to the parties, the circuit court stated that the "Court reserves the right . . . to treat said Motion as a Summary Judgment should the same be deemed appropriate and proper." This notice was twenty-one days before the hearing; one day more than required by summary judgment procedure. *See* WIS. STAT. § 802.08(2). Thus, the circuit court warned Alliance that it might treat the motion as one for summary judgment. These three facts convince us that Alliance had all the information necessary to act.

¶ 24. Alliance had the duty to protect itself by filing whatever affidavits and other materials it felt necessary to counter the information already provided to the circuit court by Stroh. While we acknowledge the burden this places on a party when the court says it *may* as opposed to *will* convert, and that it would be prudent for a circuit court to request additional materials, it is not the court's duty to spoon-feed the requirements of WIS. STAT. § 802.06(2)(b) to a party's attorneys. That Alliance did not request additional time under WIS. STAT. § 802.08(4) or attempt to file additional evidence during those three weeks before the hearing is entirely Alliance's fault. We conclude that Alliance had reasonable notice.

### Substantive Issue

¶ 25. Now that we have decided the circuit court properly treated Stroh's motion as one for summary judgment, we must dispose of it accordingly. Though Alliance focuses a substantial portion of its complaint on the argument that the trial court made impermis-

155

sible credibility determinations,[3] when we review a summary judgment, we perform the same function as the trial court, making our review de novo. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Because our review is de novo, any errors the trial court may have made in granting its judgment are irrelevant on appeal. *Eternalist Found., Inc. v. City of Platteville,* 225 Wis. 2d 759, 769–70, 593 N.W.2d 84 (Ct. App. 1999).

¶ 26. Stroh claims that there is no genuine issue. In Stroh's view, the answer is governed by the UCC, which, according to Stroh, determines this to be a "classic battle of forms." Stroh posits that, under the UCC, additional or different terms proposed by an offeree through a standard form acceptance, such as Alliance's purchase order, do not become part of the contract even if they materially alter the initial offer (the quotation), except in certain well-defined circumstances which we will discuss next. It cites WIS. STAT. § 402.207 and *Manitowoc Marine Group, LLC v. Ameron Int'l Corp.,* 424 F. Supp. 2d 1119 (E.D. Wis. 2006), *vacated in part on other grounds,* 2006 WL 1799821, in support. Stroh notes that its quotation

---

[3] Counsel for Alliance cited to a prior unpublished case reversing the same circuit court judge who presided in the instant case and which case also related to the judge's procedure regarding summary judgment methodology. We admonish counsel for doing so, especially when the case is not relevant to any appellate issue here. We also note that counsel for Stroh cited an unpublished case in its reply brief to the circuit court. Our supreme court has just recently changed WIS. STAT. RULE 809.23 so as to allow citation of unpublished opinions, so long as they are not per curiam opinions, summary dispositions or memorandum orders. But this rule is not effective until July 1, 2009, and, even then, applies only to opinions released by the court of appeals after that date.

disclaimed all implied warranties, required a thirty-day notice of defects, limited Stroh's liability to repair, replacement or °credit for their return and imposed other specific requirements upon customers making warranty claims. Alliance's purchase order materially altered the quotation because it allowed implied warranties, and had different notice procedures, remedies, and other requirements.

¶ 27. According to Stroh, two things had to happen for the purchase order to prevail. First, Alliance needed to expressly condition its acceptance of the quotation on Stroh's assent to the purchase order's terms. *See* Wis. Stat. § 402.207(1). Second, Alliance needed to make clear that it would not proceed without assurance that Stroh assented to the new terms. *See Manitowoc*, 424 F. Supp. 2d at 1134–35. Because Alliance did neither of these things, Stroh submits that the quotation controls and summary judgment was proper.

¶ 28. We agree with Stroh that when a "battle of forms" exists, Wis. Stat. § 402.207 controls, and the additional or different terms do not become a part of the contract unless the offerer unequivocally assents. *Manitowoc*, 424 F. Supp. 2d at 1134–35. And, further, we agree that the offeree had to expressly condition its acceptance to the offerer's assent to those materially altered terms. *See id.*

¶ 29. We disagree, however, that Stroh's quotation is the offer and Alliance's purchase order is the acceptance as a matter of law. When courts apply Wis. Stat. § 402.207 to determine the terms of the contract after the parties have already concluded the transaction and a dispute has arisen, we first review the offer and acceptance forms and other negotiations and then determine the effect of materially altered terms in the

157

offeree's acceptance. *See Manitowoc*, 424 F. Supp. 2d at 1133–34. That first step distinguishes this case from *Manitowoc*. There, the court could ʼassume that the buyer's "purchase order was sufficiently definite to constitute an offer" because the parties did not argue otherwise. *Id.* at 1134. Rather, the dispute was over the effect of materially altered terms in the offeree's acceptance. *Id.* at 1134–35.

¶ 30.   But here, Alliance's main argument is that Stroh's quotation was *not* sufficiently definite to constitute an offer for the individual rack gears. Alliance posits that the quotation controlled only the tooling needed to adapt the casting die, while the purchase order controlled the warranties for the individual rack gears casted in the die. Alliance observed that the quotation provides terms under its "Tooling" section only, not its "Castings" section. Tooling and castings are different. Tooling creates or modifies the molds, called "dies," for a casting; whereas, castings create the actual individual parts. Alliance contrasted the quotation with its purchase order, which provides terms for only the individual castings. And because the individual castings were allegedly defective, not the tooling creating the mold, it asserts the purchase order was the offer at issue.

¶ 31.   Other than the parties' assertions and the conflicting forms, we have no other evidence to help us decide if Stroh or Alliance assented to one another's terms, or even which party needed to assent. Depending on what the offer was and the parties other negotiations, the warranty terms could be those in the quotation, the purchase order, some other unknown document, or those supplied by Wis. Stat. § 402.207(3) when no contract was formed by the parties writings. *See Manitowoc*, 424 F. Supp. 2d at 1136 (citing *Dresser*

*Indus., Inc. Waukesha Engine Div. v. Gradall Co.*, 702 F. Supp. 726, 732–33 (E.D. Wis. 1988), *aff'd,* 965 F.2d 1442 (1992)). Thus, we must first review the preliminary step that the *Manitowoc* court was able to skip—determining which document was the offer.[4]

██

¶ 32.   Neither the Wisconsin Statutes nor the U.C.C. expressly define the term "offer." Thus, we look to common law to determine which communication constitutes the offer. *See Rich Prods. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 955–56 (E.D. Wis. 1999) (applying Wisconsin law). Common-law principles define an offer as the manifestation of willingness to enter into a bargain, made to justify another person's understanding that assent to that bargain is invited and will create a contract. *Id.* at 956 (citing RESTATEMENT (SECOND) OF CONTRACTS § 24 (1979)). In other words, an offer must be "sufficiently certain to enable a court to understand what is asked for, and what consideration is to mature the promise." *Oedekerk v. Muncie Gear Works*, 179 F.2d 821, 824 (7th Cir. 1950).

██

¶ 33.   Courts often consider a quotation a preliminary step in negotiations because it does not have the

---

[4] We determine that Alliance's complaint, though minimally effective, does meet the notice pleading requirement by alleging that Stroh's rack gears were defective, therefore stating a claim for relief that Alliance could prove through further factual proof. *See Farr v. Alternative Living Servs., Inc.*, 2002 WI App 88, ¶ 8, 253 Wis. 2d 790, 643 N.W.2d 841 (courts construe complaints liberally and should not dismiss a complaint unless it is quite clear that under no facts the plaintiff could recover). And because Alliance's complaint states a claim for relief, we need not decide if the circuit court should have granted Alliance leave to amend its complaint.

level of detail and completeness of a typical offer. *See Rich Prods. Corp.*, 66 F. Supp. 2d at 956; *Nickel v. Theresa Farmers Coop. Ass'n*, 247 Wis. 412, 415–16, 20 N.W.2d 117 (1945); *Interstate Indus., Inc. v. Barclay Indus., Inc.*, 540 F.2d 868, 873 (7th Cir. 1976). Relevant details include (1) a description of the goods to be sold, (2) the quantity and price of each item and related terms of the bargain, (3) the extent of prior inquiry, and (4) the number of persons to whom the price is quoted. *See Architectural Metal Sys. Inc. v. Consolidated Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir. 1995); *Nordyne, Inc. v. International Controls & Measurements Corp.*, 262 F.3d 843, 846 (8th Cir. 2001). Ultimately, though, even if a quotation provides sufficient detail, whether a particular quotation is an offer depends on the intent of the party making it. *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 568–69 (E.D. Va. 2006). Therefore, whether or not a quotation is an offer is a question of fact. *See* Richard D. Cudahy, *The Sales Contract—Formation*, 49 MARQ. L. REV. 108, 112 (1965).

¶ 34. In this case, a genuine issue of material fact exists as to whether the quotation was the offer for the actual rack gears. The quotation describes terms relating to only the account in general and the tooling; the castings section remains blank. The purchase order describes only the castings, not the tooling. Thus, we hold that the quotation is not sufficiently definite as a matter of law, and we must remand to the fact finder to determine the parties' intent. Only after the court knows what the offer and acceptance was can it return to WIS. STAT. § 402.207 and *Manitowoc* and its progeny to determine the warranty terms. To do otherwise would require this court to engage in a credibility determination. We reverse the grant of summary judgment and remand this

160

case with directions for the trial court to set a deadline during which Stroh must file an answer.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.