Werner KRAENZLER and Michael Newville,
Plaintiffs-Appellants,

v.

Robert BRACE and Lynn Brace,
Defendants-Respondents.

Court of Appeals

*No. 2008AP1709. Submitted on briefs May 29, 2009.
—Decided August 5, 2009.*

2009 WI App 131

(Also reported in 773 N.W.2d 481.)

265

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark S. Schmitt* of *Maynard Schmitt & Associates, LLP* of Cedarburg.

On behalf of the defendants-respondents, the cause was submitted on the brief of *K. Scott Wagner, Jacques C. Condon* and *Blake S. Olson* of *Hale & Wagner, S.C.,* of Milwaukee.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. BROWN, C.J. This is a Uniform Commercial Code (U.C.C.) case. More specifically, this case is about whether parties may completely opt out of the U.C.C.

when drafting contract terms in a security agreement or if some provisions in the U.C.C. are unwaivable. Robert and Lynn Brace (Brace) loaned Werner Kraenzler and Michael Newville (Kraenzler) money to fund a business venture. The terms of the loan were written in a security agreement between Brace and Kraenzler. In Wisconsin, the U.C.C. provides the basic framework for commercial transactions for businesses and individuals.[1] Wis. Stat. § 401.102(2). There is an exception to the U.C.C. that allows parties in mutual agreement to opt out of the standard provisions governing commercial transactions. Sec. 401.102(3). But there is also an exception to this exception that certain rights cannot be varied by contracting parties. *Id.* The issue in this case concerns the exception to the exception, where a party in default cannot waive certain rights in a contract. We hold that where the U.C.C. requires, those provisions may not be waived or varied by contracting parties. Because the circuit court ruled that all limitations in the U.C.C. may be varied by agreement, we reverse and remand with directions that the circuit court examine the rights of the parties in light of the relevant U.C.C. provisions which we hereafter discuss.

### Background

¶ 2.    In the fall of 2004, Brace heard that Kraenzler needed money to produce parts for 1932 Ford roadsters.[2] Shortly thereafter, Brace and Kraenzler entered into a security agreement, which the parties

---

[1] Wisconsin adopted the U.C.C. in Wis. Stat. chs. 401–11. Wis. Stat. § 401.101 (2007–08). All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[2] Brace and Kraenzler are both hobby car enthusiasts with experience building custom-made street rod cars. One of the most popular models among such enthusiasts is the 1932 Ford

titled "Short Term Contract." The terms required Brace to loan $14,103.78 to Kraenzler and, in return, for Kraenzler to pay Brace $2000, deliver three sets of frame rails and boxing plates, and repay the principal.[3] The purpose of the loan was to purchase steel to reproduce frame rails and boxing plates for 1932 Ford roadsters. The stamping dies Kraenzler used to create the frame rails and boxing plates were identified as the collateral to secure repayment of the loan.[4] Kraenzler was supposed to pay Brace the $2000 and the loan principal in even installments over a six-month period beginning January 7, 2005, and ending June 7, 2005. If Kraenzler made every payment on time, he would have had to pay Brace $4460 in interest, or almost 32% interest for Brace's six-month loan.

¶ 3.   Kraenzler ultimately failed to make any of the monthly payments. In total, Kraenzler incurred late penalties of $17,220,[5] resulting in a repayment of

roadster. The model car industry is highly competitive and the production of quality components is a competitive advantage for enthusiasts. Brace had previously received model car parts from Kraenzler and was impressed with their quality.

[3] Brace valued the frame rails at $695 per set and boxing plates at $125 per set in his affidavit to the circuit court. These values were ultimately used to calculate damages. However, the value of the frame rails and boxing plates were not included in the written terms of the contract.

[4] Dies are molds that create casts, which are used to then create individual parts. *Alliance Laundry Sys. LLC v. Stroh Die Casting Co.*, 2008 WI App 180, ¶ 30, 315 Wis. 2d 143, 763 N.W.2d 167. Steel is placed into the press, struck by the die and is thus shaped into the frame rail. According to Kraenzler, the dies in question had a value exceeding $300,000.

[5] The first late payment resulted in a penalty of one set of frame rails and boxing plates; the second late payment resulted in a penalty of two sets of frame rails and boxing plates, and so

$35,783.78, including the principal. These additional penalties resulted in Kraenzler having to pay almost 250% interest on the $14,103.78 six-month loan.

¶ 4.   In August 2005, well after the due date for the final payment, Brace negotiated with Kraenzler to extend the deadline for full payment, including penalties, to the end of 2005. After the extension, Kraenzler paid Brace $2000 and delivered three sets of frame rails and boxing plates. Kraenzler made no further payments and Brace sent a notice of default on January 3, 2006. When Kraenzler did not respond, Brace located the stamping dies and sold the dies to a third party for an undisclosed sum.

¶ 5.   Kraenzler discovered that Brace had sold the dies and sued Brace for violating certain provisions governing security agreements in WIS. STAT. ch. 409. Particularly, Kraenzler asserted that Brace violated Kraenzler's rights as a debtor in default under WIS. STAT. § 409.602. This included Kraenzler's right to require a commercially reasonable sale of collateral and the other rights provided by § 409.602. *See* § 409.602(2), (3), (5) & (11).

¶ 6.   In response, Brace counterclaimed for breach of contract. Brace requested damages for the unpaid principal, $14,103.78, and cumulative penalties of

forth. From the contract it is not clear whether the penalties were meant to be cumulative, although Brace calculated damages cumulatively and the circuit court awarded cumulative damages. The cumulative effect of missing each of the six monthly installments results in a total penalty of twenty-one sets of frame rails and boxing plates. The monetary value of twenty-one sets is calculated as twenty-one times the combined value of a set of frame rails ($695) and boxing plates ($125).

twenty-four sets of frame rails and boxing plates worth $19,680, which he calculated as a total of $33,783.76.[6]

¶ 7. On Kraenzler's motion for summary judgment, the circuit court ruled for Brace, holding that the provisions in WIS. STAT. ch. 409 could be varied by agreement, and therefore the agreement between Kraenzler and Brace was not prohibited by ch. 409.[7] The court awarded Brace's requested damages plus additional statutory costs. On appeal, Kraenzler proposes the same argument that he presented to the circuit court.

## Discussion

¶ 8. We review the circuit court's summary judgment ruling independently, applying the same standards as the circuit court. *Alberte v. Anew Health Care Servs., Inc.*, 2000 WI 7, ¶ 6, 232 Wis. 2d 587, 605 N.W.2d 515; *see also* WIS. STAT. § 802.08(2). The circuit court based its summary judgment ruling on the interpretation and application of WIS. STAT. § 401.102(3) and WIS. STAT. ch. 409. The interpretation and application of statutes are questions of law that we also review

---

[6] As an additional note, we are under the impression from the record that Brace is actually owed only twenty-one sets of frame rails and boxing plates because Kraenzler already delivered three sets of frame rails and boxing plates to Brace. The circuit court should also consider this in an accounting for damages and surplus upon remand.

[7] The circuit court referred to Article 9 of the U.C.C. in their holding. Article 9, governing secured transactions, was codified in WIS. STAT. ch. 409, so we will refer solely to the Wisconsin Statutes to avoid confusion. *See* WIS. STAT. §§ 401.101 and 409.101.

without deference to the circuit court. *See Gonzalez v. Teskey*, 160 Wis. 2d 1, 7–8, 465 N.W.2d 525 (Ct. App. 1990).

¶ 9.   The purpose of the U.C.C. is to simplify the law surrounding commercial transactions. Wis. Stat. § 401.102(2)(a). This promotes agreements between parties and uniformity of application among jurisdictions. Sec. 402.102(2)(b)-(c). Due to its uniform application, we rely on precedent from Wisconsin and other jurisdictions to evaluate provisions of the U.C.C. *National Operating, L.P. v. Mutual Life Ins. Co. of N.Y.*, 2001 WI 87, ¶ 30, 244 Wis. 2d 839, 630 N.W.2d 116.

¶ 10.   The issue on appeal centers on a conflict between U.C.C. provisions and the specific terms of the security agreement which provided that the ownership of the collateral, the stamping dies, transferred to Brace upon default. Brace and Kraenzler rely on different language in Wis. Stat. § 401.102(3) to support their arguments on appeal. Section 401.102(3) states:

> **(3)** The effect of chs. 401 to 411 may be varied by agreement, *except as otherwise provided in chs. 401 to 411* and except that the obligations of good faith, diligence, reasonableness and care prescribed by chs. 401 to 411 may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable. (Emphasis added.)

¶ 11.   Brace's argument hinges on that portion of Wis. Stat. § 401.102(3) which we have underscored above:   that parties can opt out of all U.C.C. provisions by varying the terms in the contract. The circuit court apparently adopted Brace's argument that Kraenzler

did not have any additional rights beyond those identified in the security agreement.

¶ 12. Conversely, Kraenzler relies on the part of Wis. Stat. § 401.102(3) that we have italicized above: an exception to the exception exists allowing parties to vary the effect of Wis. Stat. chs. 401 to 411 by contract. Based on Kraenzler's reading of § 401.102(3), the unwaivable rights listed in Wis. Stat. § 409.602 are an exception to the exception that prohibits parties from waiving certain rights in a contract.[8]

---

[8] Wisconsin Stat. § 409.602 states:

**Waiver and variance of rights and duties.** Except as otherwise provided in s. 409.624, to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in the following listed sections:

**(1)** Section 409.207(2)(d)3., which deals with use and operation of the collateral by the secured party;

**(2)** Section 409.210, which deals with requests for an accounting and requests concerning a list of collateral and statement of account;

**(3)** Section 409.607(3), which deals with collection and enforcement of collateral;

**(4)** Sections 409.608(1) and 409.615(3) to the extent that they deal with application or payment of noncash proceeds of collection, enforcement, or disposition;

**(5)** Sections 409.608(1) and 409.615(4) to the extent that they require accounting for or payment of surplus proceeds of collateral;

**(6)** Section 409.609 to the extent that it imposes upon a secured party that takes possession of collateral without judicial process the duty to do so without breach of peace;

**(7)** Sections 409.610(2), 409.611, 409.613, and 409.614, which deal with disposition of collateral;

**(8)** Section 409.615(6), which deals with calculation of a deficiency or surplus when a disposition is made to the secured party, a person related to the secured party, or a secondary obligor;

¶ 13. Although the issue the parties present is the meaning of WIS. STAT. § 401.102(3), we hold that this statute is clear and unambiguous on its face. The statute's first clause states an exception that parties may opt out of the U.C.C. by contract. Sec. 401.102(3). This is followed by a second clause which clearly states the exception to the exception that the U.C.C. may be varied by agreement, unless a U.C.C. provision provides otherwise. *Id.* Section 401.102(3) cannot be interpreted any other way. Just because Brace refuses to fully read the statute and address the second clause does not mean that the statute has more than one interpretation. *See State ex rel. Kalal v. Dane County*, 2004 WI 58, ¶ 47, 271 Wis. 2d 633, 681 N.W.2d 110 (for ambiguity to exist, it is not enough that there is disagreement about the meaning of a statute). Therefore, the true issue is not whether § 401.102(3) allows parties to unilaterally opt out of U.C.C. provisions. Instead, the issue is whether WIS. STAT. § 409.602 is an exception to the exception referred to in § 401.102(3). If the rights Kraenzler claims in § 409.602 are those that are "otherwise provided," then they cannot be waived. *See* § 401.102(3).

¶ 14. WISCONSIN STAT. § 401.102(3) is silent as to which U.C.C. provisions qualify as exceptions to the exception. So, we turn to the statute, WIS. STAT.

(9) Section 409.616, which deals with explanation of the calculation of a surplus or deficiency;

(10) Sections 409.620, 409.621, and 409.622, which deal with acceptance of collateral in satisfaction of obligation;

(11) Section 409.623, which deals with redemption of collateral;

(12) Section 409.624, which deals with permissible waivers; and

(13) Sections 409.625 and 409.626, which deal with the secured party's liability for failure to comply with this chapter.

273

§ 409.602, and relevant case law. Section 409.602 begins: "Except as otherwise provided in s. 409.624, to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor *may not waive or vary the rules stated in the following listed sections.*"[9] (Emphasis added.) Once again, we are faced with an unambiguous rule. Section 409.602 is clearly an exception to the exception, and provides that Kraenzler cannot waive the rights listed within the statute. These include the right to: (a) require that the secured party may use the collateral only in the manner and extent agreed to by the debtor, subsec. (1); (b) request an accounting from the secured party regarding the collateral and any surplus from the sale of the collateral, subsec. (2); (c) require that the secured party proceed in a commercially reasonable manner when enforcing the obligation against the debtor, subsecs. (3) and (4); (d) application of the proceeds from the collateral to the debtor's obligation under the loan, subsec. (5); (e) receive timely notice upon disposition of the collateral by the secured party, subsec. (7); (f) a calculation and explanation of the surplus or deficiency on disposition of the collateral, subsecs. (8) and (9); (g) redeem the collateral, subsec. (11); and (h) remedies under Wis. Stat. §§ 409.625 and 409.626 when the secured party fails to comply with ch. 409, subsec. (13). Sec. 409.602(1)–(5), (7)-(9), (11), (13). While the rights listed above can never be waived, the debtor is entitled to waive select rights, but only *after*

---

[9] Wisconsin Stat. § 409.624 allows a debtor in default to waive the right to notification of the disposition of collateral, mandatory disposition and redemption of the collateral, but only by an authenticated agreement after default. There was no such agreement between Brace and Kraenzler and, therefore, this exception is irrelevant for this case.

the default occurs. Sec. 409.602(12). This includes the right to consent to the acceptance of the collateral, in full, after default. Sec. 409.602(10).

¶ 15. We find further support for our conclusion in *National Operating, L.P.,* 244 Wis. 2d 839. In *National Operating, L.P.,* our supreme court addressed the same underlying issue, a debtor in default of a security interest under WIS. STAT. ch. 409,[10] with a different set of facts. *Id.,* ¶¶ 1–2. The court held that when the debtor defaulted on the security agreement, the secured party had rights to enforce the terms of the agreement except as *limited* by provisions in ch. 409. *See National Operating, L.P.,* 244 Wis. 2d 839, ¶¶ 47, 103. Therefore, the debtor could not waive or vary his or her right to surplus equity on disposition of the collateral, or to contest the commercial reasonableness of the sale. *Id.,* ¶¶ 37–38, 43. Lastly, the court held that the debtor could waive his or her right to redeem the collateral, but only in *writing, after default. Id.,* ¶¶ 44, 46.

¶ 16. Our supreme court's analysis in *National Operating, L.P.* was influenced by the official comment

---

[10] In *National Operating, L.P. v. Mutual Life Insurance Co. of New York,* 2001 WI 87, 31 n.8, 244 Wis. 2d 839, 630 N.W.2d 116, our supreme court recognized that WIS. STAT. ch. 409 and Article 9 of the U.C.C. are virtually identical. Consequently, the supreme court referred to Article 9 and ch. 409 interchangeably throughout the opinion. *Id.*

We also note that *National Operating, L.P.* was decided using prerevision U.C.C. provisions in WIS. STAT. §§ 409.501–07, covering secured transactions in default. When Article 9 of the U.C.C. was amended in 2001, WIS. STAT. ch. 409 was repealed and recreated. *See* 2001 Wis. Act 10, § 78. As such, the language quoted by the court in *National Operating, L.P.* under the prerevision statutes is substantially similar to the revised statutory language for debtors in default in ch. 409, subch. 6.

to the U.C.C. that the "legal system traditionally has looked with suspicion on agreements that limit the debtor's rights and free the secured party of its duties . . . . The specified rights of the debtor and duties of the secured party may not be waived or varied except as stated." Official U.C.C. Comment 2, WIS. STAT. ANN. § 409.602 (West 2003); *see also National Operating, L.P.*, 244 Wis. 2d 839, ¶ 47. Stated succinctly, our supreme court applied the written terms of the security agreement except where WIS. STAT. ch. 409 provided otherwise. While this case confirms our unambiguous reading of WIS. STAT. § 409.602, it should be noted that several other jurisdictions support our interpretation of the exception to the exception as well.[11]

¶ 17. Despite the straightforward opinion in *National Operating, L.P.*, Brace attempts to distinguish the holding from this case by arguing that (1) the

[11] *See AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 472–73 (7th Cir. 2001) (holding that a debtor could not waive right to commercially reasonable disposition of collateral and that any language that could be interpreted as a waiver was unenforceable); *In re Schwalb*, 347 B.R. 726, 748 (Bankr. D. Nev. 2006) (observing that where parties signed security agreements containing prohibited waivers and sought to enforce them, courts most often read relevant documents as if the prohibited language had never been included); *Tropical Jewelers, Inc. v. Nationsbank, N.A. (South)*, 781 So. 2d 392, 392–93 (Fla. Dist. Ct. App. 2000) (holding that the right to commercially reasonable disposition of repossessed property could not be waived by the debtor); *Clune Equip. Leasing Co. v. Spangler*, 615 S.W.2d 106, 107–08 (Mo. Ct. App. 1981) (holding that guarantor was entitled to reasonable notice by secured party under the U.C.C., despite waiver of notice in the lease agreement); *Morgan Bldgs. and Spas, Inc. v. Turn-Key Leasing, Ltd.*, 97 S.W.3d 871, 880 (Tex. App. 2003) (holding that a security agreement could not vary requirements of notice and commercially reasonable disposition of collateral under the U.C.C.).

security agreement in *National Operating, L.P.* included the default terms listed in the U.C.C. only and (2) the agreement between the parties in *National Operating, L.P.* was more complicated than the contract in this case. We disagree with Brace's argument. At its core, our supreme court addressed the same issue that we now address: the rights of the debtor in default under what is now WIS. STAT. § 409.602. *See National Operating, L.P.*, 244 Wis. 2d 839, ¶¶ 60–62. Despite these differences, the law is the same, and the statement of law applies just as strongly to the facts of this case as it does to the facts of *National Operating, L.P.*

¶ 18. Brace also tries to rely on two cases from foreign jurisdictions to support his argument. The first case, *R.I. Spiece Sales Co., Inc. v. Bank One, NA*, No. 1:03–CV-175–TS, 2005 WL 1653990, at *4 (N.D. Ind. 2005), involved a disagreement about whether contract terms or U.C.C. provisions controlled in a court-ordered bankruptcy plan under Article 9. The court stated that parties could opt out of the U.C.C., and the plain meaning and intent of the parties trumped *particular* provisions of the U.C.C. *R.I. Spiece Sales Co.*, 2005 WL 1653990, at *5. Brace argues that this supports his interpretation of WIS. STAT. § 401.102(3) that parties may contract around all U.C.C. provisions. However, the use of the word "particular" by the court implies that contract terms may overrule only certain U.C.C. provisions, not all. Further, Brace failed to include in his brief that the U.C.C. provision at issue in *R.I. Spiece Sales Co.*, U.C.C. § 9–513, which governed notice requirements for termination statements, did not contain any language that prohibited the waiver of the rights or duties of the parties by contract. *See* Ind. Code. § 26–1-9.1–513 (2005). Therefore, it is entirely appropriate that the court upheld the contract provisions because

§ 9–513 was not an exception to the exception, and could not trump the contract terms. *See R.I. Spiece Sales Co.*, 2005 WL 1653990, at *5–6.

¶ 19.  The second case Brace cites, *Symphony Fabrics Corp. v. Podell Industries, Inc.*, 94 Civ. 4373 (BSJ), 1996 WL 497011, at *1 (S.D.N.Y. 1996), involved a clothing manufacturer that was suing a retailer for an unpaid balance on a shipped order. *Symphony Fabrics Corp.* is a nonconforming goods case falling under Article 2 of the U.C.C., which required the court to interpret different provisions than those at issue in our case. *Symphony Fabrics Corp.*, 1996 WL 497011, at *5. However, once again, the statutes disputed in *Symphony Fabrics Corp.*, U.C.C. §§ 2–206, 2–601 and 2–714, did not contain *any* language that prohibited parties from waiving their rights via contract. *Symphony Fabrics Corp.*, 1996 WL 497011, at *5. In fact, the language in the U.C.C. provisions indicated that the contract terms *would* be binding if the parties chose to opt out of the U.C.C. *See* U.C.C. §§ 1–102(3), 2–206, 2–601 and 2–714. So although the court stated in its opinion that "the contract clause in the purchase order must trump this U.C.C. provision," this was a correct statement under the facts of the case, because there was no provision in the relevant U.C.C. sections which provided that the parties could *not* vary the effect of the U.C.C. *See Symphony Fabrics Corp.*, 1996 WL 497011, at *5 (citing U.C.C. § 1–102(3) for the proposition that the effect of the U.C.C. may be varied by agreement). Because neither case addressed a U.C.C. provision that contained prohibitory language similar to WIS. STAT. § 409.602, Brace fails to support his argument that contracting parties may completely opt out of U.C.C. provisions.

¶ 20. For the reasons stated above, we hold that the plain language of Wis. Stat. § 401.102(3) states first an exception that parties may vary the effect of U.C.C. provisions by agreement and, second, an exception to the exception that Wis. Stat. chs. 401 to 411 include provisions that certain rights may not be waived by contract. The subsections in Wis. Stat. § 409.602 are plainly just such an exception to the exception defined in § 401.102(3), so the parties must abide by them. Therefore we reverse and remand with directions that the circuit court proceed in a manner not inconsistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.